UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TRENICE WEBB                                    CIVIL ACTION

VERSUS                                          NO. 15-6949

DOLGENCORP, LLC ET AL.                          SECTION "F" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Trenice Webb, settled this personal injury lawsuit against defendant, D.G. Louisiana, LLC (incorrectly named as Dolgencorp, LLC in the original petition). The court conditionally dismissed the action, "retain[ing] jurisdiction for all purposes, including enforcing the settlement agreement entered into by the parties." Record Doc. No. 52. Webb, through her counsel of record, Justin M. Chopin, Richard A. Chopin and the Chopin Law Firm ("Chopin"), filed a Motion to Allocate/Apportion Attorney's Fees and Expenses, Record Doc. No. 53, which the presiding district judge referred to me for report and recommendation. Record Doc. No. 69.

The motion presents a dispute between Webb's current and former attorneys over the allocation between them of attorney's fees and costs due from the settlement. Plaintiff had contingency fee contracts with three successive attorneys. Her first attorney, Kenny Charbonnet, gathered some evidence in this matter, but died before suit was filed. Her second attorney, Darleen M. Jacobs, APLC, filed the lawsuit, but withdrew as counsel of record about two weeks later. Record Doc. Nos. 7, 8. Chopin then handled the case through settlement and dismissal, a time period now reaching ten months. After the case

was dismissed, Jacobs intervened in the action on her own behalf and on behalf of the Estate of Charbonnet to recover their attorney's fees and costs.

I.     FACTUAL BACKGROUND

The facts regarding when the attorneys represented Webb, the amount of the settlement and the total amount of attorney's fees due are undisputed.  The attorneys dispute how to allocate the contingency fee among the three law firms and whether Charbonnet's estate and Jacobs should be reimbursed for two expenses of $100 and $60.

Webb settled this matter with defendant for $42,500.00 on August 30, 2016.  She had signed contingency contracts with each of her attorneys, agreeing to pay them 40 percent of any gross recovery after suit was filed, plus costs.  The amount of attorney's fees due under the contracts is 40 percent of $42,500.00, or $17,000.00, plus expenses. Because of the fee dispute between the lawyers, defendant issued a check for the entire settlement amount payable to Webb, Chopin and Jacobs.

On January 5, 2015, Webb retained Charbonnet to represent her in connection with her alleged slip and fall in defendant's store on December 20, 2014, pursuant to a contingency fee contract.  Plaintiff's affidavit, Record Doc. No. 53-8 at ¶ 3; Contract of Employment and Limited Power of Attorney, Record Doc. No. 53-3.  According to Charbonnet's undisputed expense ledger, he paid "Grance Solomon" $100 for transportation on that date and then paid for copies of Webb's medical records, additional

2

medical expenses, prescription drugs and "advances for necessities," expending a total of $3,043.12 through November 3, 2015.  Record Doc. No. 53-6.

After Charbonnet died, his estate appointed Jacobs to review his files, notify his clients of his death and take any necessary steps to preserve the clients' rights.  Jacobs advised Webb of Charbonnet's death on November 14, 2015, and offered to represent Webb in her claim against defendant.  Webb signed a letter stating that she wished to retain Jacobs and signed a contingency fee contract, both dated December 4, 2015.  Record Doc. Nos. 58-4, 81-7 at pp. 2, 16.  On that date, Jacobs filed a three-page Petition for Damages and a one-page Request for Notice against defendant in Civil District Court for the Parish of Orleans.  Record Doc. No. 1-2.  Her undisputed expense ledger shows that Jacobs issued checks that day for a $60 transportation charge to "Rance Solomon," a medical evaluation and the filing fees for the lawsuit, and later paid for a prescription for Webb.  These expenses totaled $1,162.06.  Record Doc. Nos. 53-7, 81-7 at p. 15.

In response to a letter from defendant's lawyer, Sean Mount, Record Doc. No. 81-7 at p. 18, an attorney in Jacobs's firm stated on December 15, 2015 that Webb would not stipulate that her damages were less than $75,000 and that Jacobs intended to file an amended petition.  Record Doc. No. 1-2 at p. 5.  Jacobs's exhibits to her third supplemental memorandum in opposition to plaintiff's motion to allocate fees include a draft of a supplemental and amending petition for damages, Record Doc. No. 81-7 at

p. 17, but it was never filed in the state court.  Defendant removed the case to this court on December 18, 2015, based on diversity jurisdiction.  Record Doc. No. 1.

Jacobs signed a Non-Engagement Letter and Acknowledgment of Expenses on December 16, 2015, stating that she would not represent plaintiff and advising Webb to hire another lawyer to pursue her claim.  Webb signed and dated the letter the same day, acknowledging that she had received her file, that her claim had incurred $3,043.12 in expenses to date and that she remained responsible for any outstanding attorney's fees and medical expenses.  Record Doc. No. 7-2, attached to Jacobs's Motion to Withdraw as Counsel of Record.

Webb states in her own affidavit that she met with Jacobs only once.  Webb avers that she did not like Jacobs and told Jacobs at that meeting that she intended to hire a different lawyer.  Record Doc. No. 53-8 at ¶¶ 5 through 7.  Although plaintiff says she did not know that Jacobs had filed suit on her behalf, Webb does not deny that she signed a contract with Jacobs, that Jacobs paid the costs listed on her ledger, or that Webb signed the Non-Engagement Letter and Acknowledgment of Expenses on December 16, 2015.  The contract and letters that plaintiff signed, the ledger and the petition for damages filed on December 4, 2015 indicate that the meeting occurred and that Webb hired Jacobs to represent her on that day.

Jacobs moved to withdraw as counsel of record on December 21, 2015, and the order permitting her to withdraw was entered on December 23, 2015.  Record Doc. Nos.

4

7, 8, 11.  Chopin moved to enroll as Webb's attorney on the day that Jacobs's motion was granted.  Record Doc. No. 10.  Plaintiff signed a contingency fee agreement with Chopin on January 5, 2015.  Record Doc. No. 53-3.  During the next eight months, Chopin amended the complaint, propounded discovery, participated in conferences, engaged in motion practice, filed witness and exhibit lists, and negotiated and finalized a settlement on August 30, 2016.  Defendant's attorney, Anne Medo, states in her affidavit attached to plaintiff's motion that the settlement "was reached entirely through the efforts of the Chopin Law Firm on behalf of the plaintiff" and that Medo had no communications with Jacobs until after the case had settled.  Record Doc. No. 53-13 at ¶¶ 5, 7.[1]

## II.    PROCEDURAL BACKGROUND

After dismissal, Webb filed her motion to allocate/apportion attorney's fees and expenses, stating that Chopin and Jacobs could not agree regarding the amount of fees and costs that Jacobs and Charbonnet's estate should receive from the settlement for their work on the case.  Plaintiff asked the court to resolve the dispute.  Record Doc. No. 53.  At that time, neither Jacobs nor Charbonnet's estate was a party to this action.  Both received leave to intervene, Record Doc. Nos. 55, 56, 57, 60, 62, 63, and they filed four

---

[1]Although Medo says she "was counsel of record" for defendant "at all material times," id. at ¶ 3, she did not actually enroll as counsel for defendant until February 19, 2016.  Record Doc. Nos. 17, 18. However, Medo's partner, Sean Mount, has been defendant's counsel ever since the lawsuit was filed in state court, Record Doc. No. 1-2, and remains one of defendant's counsel of record.

memoranda in opposition to plaintiff's motion.  Record Doc. Nos. 58, 65, 71, 81.  Webb filed two reply memoranda.  Record Doc. Nos. 73, 85.

As to expenses, Webb does not dispute that intervenors may recover their reasonable costs, but argues that the charges of $100 and $60 paid by Charbonnet and Jacobs to "Grance" and "Rance" Solomon for transportation are undocumented, unnecessary and unreasonable.  Intervenors do not respond to this argument and therefore waive both the argument and the claim.  Hardman v. Colvin, 820 F.3d 142, 145 (5th Cir. 2016).  I find that intervenors should not recover these unexplained and facially unreasonable costs.  Plaintiff concedes, and I find, that the remainder of Charbonnet's and Jacobs's costs were reasonable.  Thus, Charbonnet's estate should recover $2,943.12 ($3,043.12 minus $100.00) and Jacobs should recover $1,102.06 ($1,162.06 minus $60.00) in reasonable expenses.

As to attorney's fees, Webb asserts that intervenors initially demanded $7,000 in attorney's fees, or 41 percent of the total available $17,000 in fees.  (The record contains no written demand for this amount.)  Webb argues that this amount is unreasonable because of the limited amount of work that Jacobs and Charbonnet did compared to that performed by Chopin.

In their first memorandum, intervenors responded to Webb's motion by asserting that they are entitled to a trial with the opportunity to present witnesses and evidence on their complaint in intervention, but they cited no relevant law in support of the argument.

They rejected Webb's contention that Jacobs should be allocated $500 in attorney's fees and argued that the motion should be denied entirely.  Record Doc. No. 58.

In their subsequent memoranda, intervenors submitted a recapitulation of task and time entries totaling 23 hours for Jacobs and 10.25 hours for Charbonnet.  They allege that Jacobs bills at $350 per hour and that Charbonnet billed at $250 per hour.  Based on these time entries and hourly rates, intervenors in their first supplemental memorandum requested an allocation of $10,612.50 in attorney's fees, plus their costs.  Record Doc. No. 65 at p. 4.  In their third supplemental memorandum, intervenors submitted an admissible affidavit that verifies the same time and hourly rate recapitulation, and copies of letters and medical records as additional documentation of the time that Jacobs and Charbonnet each spent.  Rather than expressly seeking an allocation of their fees in this memorandum, however, intervenors argue again that Webb's motion should be denied. Record Doc. No. 81.

Plaintiff does not contest the hourly rates in Jacobs's affidavit, but responds that Jacobs's affidavit regarding her own time is not credible because much of the time is excessive on its face.  Webb argues that Jacobs admittedly has no personal knowledge of the time spent by Charbonnet and that Jacobs's reconstruction of Charbonnet's time, based on his file copies of correspondence and medical records and on Jacobs's asserted "personal knowledge over her 45 years in the practice of law of how long the respective tasks cited below take an attorney to perform, including the time that it took the late Mr.

Charbonnet to perform the tasks listed below," is inadequate and speculative regarding Charbonnet's time.  Jacobs's affidavit, Record Doc. No. 81-1.  Plaintiff contends that Jacobs did nothing, except file a boilerplate state court petition and send plaintiff to one doctor's appointment, while Chopin performed all the work to prepare the case for trial and obtain a settlement.  Webb initially suggested that fees of $750 for Charbonnet's work and $500 for Jacobs's work would be reasonable, but in light of intervenors' subsequent request to this court for an allocation of more than 60 percent of the total fees, Webb argues in her final reply memorandum that intervenors should recover only their reasonable costs.

This is not a motion by a prevailing or contractually entitled party seeking an award of attorney's fees and costs from its <u>opponent</u> under a fee-shifting statute or contract.  It is undisputed that Webb owes her attorneys 40 percent of the settlement amount as a fee, plus costs.  Plaintiff initially filed her motion to allocate fees and costs against a <u>non</u>-party, Jacobs, after which Jacobs and Charbonnet's estate filed complaints in intervention against Webb and defendant to assert their claims for attorney's fees and costs.[2]  Intervenors responded to the motion by urging both that it be denied and that it be decided in their favor by allocating to them $10,612.50 in attorney's fees, plus costs, all

---

[2]Webb answered Jacobs's complaint in intervention, Record Doc. No. 59, but did not answer the amended complaint adding Charbonnet's estate as an intervenor.  Defendant did not answer either complaint, but tendered the entire settlement amount in a check made out to Webb, Chopin and Jacobs.

supported by Jacobs's affidavit, her and Charbonnet's reconstructed time entries, and copies of their file materials.

Fed. R. Civ. P. 54(d) permits a party making a claim for attorney's fees and related expenses to do so by motion and allows the district court to resolve fee-related issues without extensive evidentiary hearings.  Fed. R. Civ. P. 54(d)(2)(D).  This court's standard procedure is <u>not</u> to have live evidentiary hearings on motions to determine attorney's fees, but to decide the reasonableness of fees based on written submissions, including affidavits and verified time and expense records.  <u>Id.</u>; Local Rule 54.2. Intervenors have not cited, and the court is not aware of, any "substantive law [that] requires those fees to be proved at trial as an element of damages."  Fed. R. Civ. P. 54(d)(2)(A).  The court therefore recommends that plaintiff's motion be determined, rather than denied, and that the fees be allocated as follows.

III.    <u>ANALYSIS</u>

A.    <u>Standards for Reasonable Attorney's Fees Under Louisiana Law</u>

Allocation of the 40 percent contingency fee that Webb owes to her attorneys is governed by Louisiana law in this diversity case in which Louisiana state law provides the substantive rules of decision.  <u>Chevron USA, Inc. v. Aker Maritime Inc.</u>, 689 F.3d 497, 505 (5th Cir. 2012); <u>Mathis v. Exxon Corp.</u>, 302 F.3d 448, 461 (5th Cir. 2002).  "In Louisiana, the amount of an attorneys'-fees award is governed by Rule 1.5 of the Rules of Professional Conduct."  <u>Chevron USA, Inc.</u>, 689 F.3d at 505 (citing <u>State Dep't of</u>

9

Transp. & Dev. v. Williamson, 597 So. 2d 439, 442 n.9 (La. 1992)).  Rule 1.5 provides

that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee

or an unreasonable amount for expenses."  La. R. of Prof. Conduct 1.5(a).

        The Louisiana Supreme Court and its appellate courts, based on "the Rules of

Professional Conduct's ban against an attorney accepting a clearly excessive fee, have

placed an obligation on courts to inquire into the reasonableness of attorney fees

stipulated in contractual agreements." Teche Bank & Trust Co. v. Willis, 631 So. 2d 644,

646 (La. App. 3d Cir. 1994) (citations omitted).  "A fee is 'clearly excessive,' if it is so

grossly out of proportion with the fees charged for similar services by other attorneys in

the locale as to constitute an unquestionable abuse of the attorney's professional

responsibility to the public."  Id. at 646-47 (quotation omitted).

        "The fundamental measure of attorney's fees is reasonableness, considering the

factors set forth by Rules of Professional Conduct R. 1.5 [now Rule 1.5(a)]." Mayeur v.

Campbell, 666 So. 2d 366, 370 (La. App. 1st Cir. 1995); cf. In re High Sulfur Content

Gasoline Prods. Liab. Litig., 517 F.3d 220, 228 (5th Cir. 2008) (federal district court has

"responsibility to ensure that the individual awards [of attorney's fees from a common

fund settlement that were allocated to various plaintiffs' attorneys in a class action] were

fair and reasonable").  "Louisiana Courts regularly uphold attorney's fees pursuant to a

contingency fee contract as long as the fees are reasonable." Alston v. Fleetwood Motor

Homes of Ind. Inc., 480 F.3d 695, 703-04 (5th Cir. 2007) (citations omitted).

The factors to consider in determining the reasonableness of a fee under Rule 1.5(a) include

> (1) the time and labor required, the novelty or difficulty of the issues, and the skill required to properly perform the legal services; (2) the likelihood, if apparent to the client, that the matter will preclude other employment; (3) the fee customarily charged in the locality for similar services; (4) the amount involved and results obtained; (5) the time limitations involved by the client or circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer; and (8) whether the fee is fixed or contingent.

Ollis v. Miller, 886 So. 2d 1199, 1209 (La. App. 2d Cir. 2004) (citing La. R. of Prof. Conduct 1.5(a)).  Thus, "[a]n award of attorney fees must be reasonable based on the degree of skill and work involved in the case, the number of court appearances, the depositions, the office work and the time spent in court."  Frentress v. Howard, 728 So. 2d 1019, 1022 (La. App. 2d Cir. 1999) (citation omitted); accord Ollis, 886 So. 2d at 1209.

In Saucier v. Hayes Dairy Prods., Inc., 373 So. 2d 102 (La. 1979), the Louisiana Supreme Court addressed the allocation of fees "precisely in such a situation as this, when a client discharged his first attorney without cause and subsequently recovered damages as a result of the efforts of the second attorney."  Sewell v. Hanover Ins. Co., 517 So. 2d 413, 415 (La. App. 1st Cir. 1987).  The Supreme Court in Saucier established that the client need pay only one contingency fee and that a discharged attorney may recover whatever fee "he has earned which is not clearly excessive, up to the contractual" percentage of the damages amount.  Saucier, 373 So. 2d at 117 (emphasis added).

11

[T]hat fee should in turn be allocated between or among the various attorneys involved in handling the claim in question, such fee apportionment to be on the basis of factors which are set forth in the Code of Professional Responsibility.

We believe that this resolution comports with the letter and spirit of the Code of Professional Responsibility.  It is an equitable solution to this problem.  The amount prescribed in the contingency fee contract, not quantum meruit, is the proper frame of reference for fixing compensation for the attorney prematurely discharged without cause. . . .

This solution envisions apportionment of only the highest agreed upon contingent fee in accordance with factors set forth in the Code of Professional Responsibility.  Thus the fee is to be apportioned according to the respective services and contributions of the attorneys for work performed and other relevant factors.

Id. at 118 (emphasis added).

The trial judge allocating fees between a discharged attorney and the attorney who represented the plaintiff at the successful conclusion of the case must consider the evidence regarding the time and efforts of the respective attorneys in light of Saucier. Sewell, 517 So. 2d at 415; cf. In re High Sulfur Content Gasoline Prods., 517 F.3d at 232 (quotation omitted) (In allocating attorney's fees from a common fund settlement in a class action, the court should "compare the contributions of all plaintiffs' attorneys in order to determine if the fee allocation was equitable.  After all, [a]llocation means proportion; how does the share [one] counsel is taking compare to the shares others are getting?").

12

B.    Allocation of Fees

Intervenors' demands in this case, whether for $7,000 or 41 percent of the total $17,000 in available fees as they apparently demanded initially, or for $10,612.50 or 62 percent of the total fees as they demanded in this court, are excessive. The relevant factors in this fee allocation dispute are the contingent fee contract, which contains an undisputed fee of 40 percent of the settlement amount; the time and labor required for the tasks performed by each attorney; and the nature and length of their professional relationships with the client.

As to Charbonnet, Webb's relationship with him lasted from January 5, 2015, when she signed a contract with him, through October 2015. Apparently, Charbonnet's records did not contain a contemporaneously maintained report reflecting the date, time involved and nature of the services he performed, as required by Local Rule 54.2. The evidence regarding his work consists of Jacobs's reconstruction of his tasks and time based on the correspondence in his file. The correspondence indicates that Charbonnet advised defendant in January 2015 that Webb had retained him, he gathered plaintiff's medical records and he arranged for additional medical testing and treatment. This work was significant, but it is unknown how much time it actually required or whether it contributed to the ultimate settlement. Charbonnet did not file suit before he died. As to Jacobs's reconstruction of Charbonnet's time and labor, the court appreciates that she has lengthy experience as a plaintiff's personal injury lawyer with personal knowledge of the types

of tasks that a plaintiff's lawyer generally performs.  However, she has no personal knowledge of the time Charbonnet actually spent and she has merely estimated his time for tasks based on the correspondence in his file.  Although Jacobs's reconstruction of Charbonnet's time totals only 10.25 hours, some of the time is purely speculative, such as 2.50 hours on January 5, 2015, for the initial client interview.  An interview no doubt occurred, but Charbonnet's actual time is entirely undocumented, and one of the tasks listed, "discussion of [contingency fee] contract," is administrative rather than compensable legal work.  Other time entries are wrong, such as .25 hours allegedly spent by Charbonnet on March 23, 2015 handling an email that on its face was sent to and answered by a paralegal.  Still other entries are clearly excessive, such as 1.00 hour for preparing a very simple, routine cover letter to a healthcare provider on March 26, 2015; and/or include clerical tasks for which an attorney should not bill a client and for which a court would not award fees, such as setting up an appointment for a medical test, requesting copies of medical records or forwarding a check to a health care provider. Given these deficiencies and based on the correspondence in his file, the court finds that Charbonnet reasonably spent no more than 5.00 billable hours on this matter.

Plaintiff first met and hired Jacobs on December 4 and discharged her on December 16, 2015.  Jacobs moved to withdraw as counsel of record on December 21, 2015, and was permitted to do so by the court two days later.  The nature and length of Webb's professional relationship with Jacobs were minimal.

14

Jacobs's affidavit and file materials are competent evidence, but most of her claimed 23 hours of time entries are excessive on their face and/or unsupported by other evidence she has submitted. As proof of work that she performed, intervenors submitted eight undated interrogatories addressed to defendant through its agent for service of process. Record Doc. No. 65-1. Jacobs's time sheet states that she "propound[ed]" the discovery to defendant when she prepared the petition for damages on December 4, 2015, and that she spent a total of 5.0 hours on these two tasks. Record Doc. No. 81-1 at p. 3. However, the interrogatories have no certificate of service, the Civil District Court record attached to defendant's Notice of Removal does not include any discovery requests, and plaintiff's motion states that Chopin never saw any discovery requests from Jacobs. Record Doc. No. 53-1 at p. 3. Defendant's counsel Medo avers in her affidavit that the only discovery requests defendant received were from Chopin. Record Doc. No. 53-13 at p. 2. Thus, there is no evidence that Jacobs ever <u>served</u> any discovery requests on defendant. Similarly, although Jacobs avers that she spent 1.5 hours on December 11, 2015, drafting an amending petition, the amendment was never filed. Time spent on these tasks could not have contributed to the ultimate outcome of the case.

As with Charbonnet's time, Jacobs's time spent on administrative tasks, such as advising Webb of Charbonnet's death and having plaintiff sign a contract, are not compensable legal work. Several entries, totaling 9.5 hours, for reviewing plaintiff's medical records and Charbonnet's file on December 7, 2015, <u>after</u> the petition was filed,

15

could not have contributed to filing the petition, which was the only substantive work Jacobs did, or to preparing the case for trial and reaching the settlement.

In light of Jacobs's lengthy legal experience, including in this court, the following times she reports are excessive:  1.0 hour reviewing the emergency medical service records and bill, which consist of four pages of information and a signature page, Record Doc. No. 82-8; 1.0 hour scheduling a doctor's appointment (which would also be non-compensable, clerical work) and confirming the appointment in a letter; 1.0 hour reviewing the notice of removal and its attachments, which include state court documents that Jacobs herself created and filed; 1.5 hours reviewing defendant's one-page corporate disclosure statement; and 0.5 hours reviewing the court's one-page notice pursuant to 28 U.S.C. § 1447(b) directing the removing party to file certain documents.

Thus, Jacobs's only compensable work that could have contributed to the ultimate outcome was to meet with Webb, review the incident report, review the emergency medical service records, draft and file a routine petition for damages, and schedule one doctor's appointment, all reasonably amounting to no more than 5.75 hours.

The federal lodestar method for determining an award of attorney's fees (reasonable hours multiplied by reasonable hourly rates), adjusted as necessary by the twelve factors set forth in Johnson v. Georgia Hwy. Express, Inc., 488 F.2d 714 (5th Cir.

1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989),[3] is

"very similar" to the Louisiana method based on reasonableness and factors listed in the

Rule 1.5(a) of the Professional Rules of Conduct.  Chevron USA, Inc., 689 F.3d at 505.

Under the lodestar method, a reasonable fee before applying the Johnson factors would

be $1,250.00 (5 hours multiplied by $250 per hour) for Charbonnet and $2,012.50 (5.75

hours multiplied by $350 per hour) for Jacobs, for a total of $3,262.50.

However, I find that such a fee, which is more than 19 percent of the total amount

of attorney's fees available, is "clearly excessive" based on a comparative analysis of the

"respective services and contributions of the attorneys for work performed," the results

achieved and the overarching standard of reasonableness.  Saucier, 373 So. 2d at 118.

Accordingly, I do not apply the lodestar method, but apply a percentage of fund method

to the instant dispute over allocation of a fixed amount of attorney's fees.  Cf. Strong v.

BellSouth Telecomms., Inc., 137 F.3d 844, 852 n.5 (5th Cir. 1998) (Noting, in a dispute

over the amount of attorney's fees to be awarded from a class action settlement, that the

lodestar method is appropriate "in lieu of the percentage of fund method precisely in the

---

[3]The Johnson factors are:
(1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill
required to perform the legal services properly; (4) the preclusion of other employment
by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the
time limitations imposed by the client or circumstances; (8) the amount involved and
results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the
undesirability of the case; (11) the nature and length of the professional relationship with
the client; and (12) the award in similar cases.
Johnson, 488 F.2d at 717-19.

situation where the value of the settlement is difficult to ascertain . . . .") (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 821 (3d Cir. 1995) ("'the lodestar rationale has appeal where as here, the nature of the settlement evades the precise evaluation needed for the percentage of recovery method'"); Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 526 n.10 (1st Cir. 1991) ("'[T]he absence of any true common fund renders the percentage approach inapposite here.'")).

The work of Charbonnet and Jacobs was minimal compared to that of Chopin, who took over the case almost immediately after the petition was filed and carried out all of the necessary work thereafter to reach a settlement.  The affidavit of defendant's counsel Medo, Record Doc. No. 53-13, and the court's record in this matter establish that Chopin amended the complaint; served more than one set of written discovery; took several depositions; prepared for and defended plaintiff's deposition; reviewed documents produced by defendant and questioned deponents about the documents; communicated with Medo, her colleagues and staff; obtained and provided medical records to defense counsel; conducted multiple conferences with defense counsel regarding discovery disputes; filed two motions to compel and responded to defendant's opposition memoranda, achieving partial success with both motions; participated in oral argument on two motions; attended a scheduling conference with the court; opposed defendant's motions; filed witness and exhibit lists; engaged in settlement negotiations leading to an

18

agreement two months before the scheduled trial date; and reviewed and requested changes in the settlement documents proposed by defendant's counsel.

The services and contributions of Chopin to the progress and successful outcome of this case far outweigh those of Jacobs and Charbonnet. Accordingly, I recommend that 90 percent of the contingent attorney's fees, or $15,300.00, be allocated to Chopin and 10 percent, or $1,700.00, be allocated jointly to intervenors Jacobs and Charbonnet. The court has not been asked to allocate, and does not recommend any allocation of, fees between Jacobs and Charbonnet's estate.

<u>CONCLUSION</u>

For the foregoing reasons, IT IS RECOMMENDED that Chopin's Motion to Allocate/Apportion Attorneys Fees and Expenses be GRANTED IN PART AND DENIED IN PART as follows:

That $2,943.12 in reasonable expenses be allocated to Charbonnet's estate and that $1,102.06 in reasonable expenses be allocated to Jacobs from the settlement amount.

That the amount of $1,700.00 in reasonable attorney's fees be allocated jointly to intervenors, Jacobs and the Estate of Charbonnet, and that the amount of $15,300.00 in reasonable attorney's fees be allocated to Chopin.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[4]

New Orleans, Louisiana, this ____25th____ day of October, 2016.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[4]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.